**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3938
_____

FEN LIN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review from the Board of Immigration Appeals
BIA-1 No. A076-506-575
Immigration Judge: The Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 16, 2013

Before: RENDELL, SMITH, and SHWARTZ, *Circuit Judges*

(Filed: April 22, 2014)
_____

OPINION
_____

SMITH, *Circuit Judge*.

Fen Lin, a native and citizen of the People's Republic of China, petitions for review of

an order of the Board of Immigration Appeals ("BIA" or the "Board") denying her motion to reopen her removal proceedings. We will deny the petition.

Lin entered the United States in 2000 without proper documentation and was immediately placed in removal proceedings. At a hearing before an immigration judge ("IJ"), Lin conceded her removability, but sought asylum, withholding of removal under the Immigration and Nationality Act, and protection under the Convention Against Torture. In her applications for relief, Lin claimed that she would be persecuted if returned to China because of her opposition to China's one-child population control policy. The IJ denied Lin's application and ordered her removal. That decision was affirmed by the BIA on March 21, 2003.

Despite the removal order, Lin remained in the United States, and nine years later, on March 21, 2012, she filed with the Board a motion to reopen her removal proceedings. A motion to reopen must generally be filed within ninety days of the date of entry of a final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). Because Lin's motion did not meet this requirement, she argued for the statutory exception to the time limits where the motion is "based on changed country conditions arising in the country . . . to which removal has been ordered." *Id.* § 1229a(c)(7)(C)(ii). Specifically, Lin argued that China had begun enforcing its population control policy in a "stricter and more stringent manner," A.R. 36, and that, because she had given birth to two children in the United States, she would be forced to undergo sterilization if sent back to China.

2

In support of her motion to reopen, Lin submitted the following documentary evidence relevant to her argument of changed country conditions: a family planning letter from ChangLe City JinFeng Town TaGuang Village Resident Committee stating that Lin "must be sterilized" if she returned to China with her children, A.R. 94; a letter from her mother-in-law stating that the local family planning office informed her that Lin would be sterilized, A.R. 97; various letters and other documents from relatives and unrelated individuals stating that they had been forcibly sterilized and/or fined pursuant to population control policies, A.R. 103–67; numerous news articles, A.R. 169–215; and the 2009 and 2010 Department of State Human Rights Reports for China, A.R. 216–424.

On September 25, 2012, the Board denied Lin's untimely motion to reopen, concluding that "her evidence is insufficient to establish a change in circumstances or country conditions [in China] so as to create an exception to the time and number limitations for filing a late motion to reopen." A.R. 5. In reaching this conclusion, the Board refused to consider the bulk of Lin's evidence, stating that "[t]he documents from China have not been authenticated pursuant to 8 C.F.R. § 1287.6." A.R. 4. The Board acknowledged that § 1287.6 was not the exclusive mechanism for authenticating foreign documents, but concluded that the documents had "not been sufficiently authenticated in any manner." *Id.* Turning to State Department reports, the Board concluded that, although the evidence generally indicates "that social compensation fees, job loss or demotion, loss of promotion opportunity . . . and other administrative punishments are used to enforce the family planning policy," the evidence was

3

"not sufficient to demonstrate that [Lin] will be subjected to sterilization." *Id.*

Lin timely filed this appeal. The BIA had authority to rule upon Lin's motion to reopen under 8 C.F.R. § 1003.2(a) and (c). We exercise jurisdiction over this final order under 8 U.S.C. § 1252(a). We review the denial of a motion to reopen for abuse of discretion. *Zhu v. Att'y Gen.*, 744 F.3d 268, 271 (3d Cir. 2014). "[T]he BIA's ultimate decision is entitled to 'broad deference,' and 'will not be disturbed unless [it is] found to be arbitrary, irrational, or contrary to law.'" *Id.* (citations omitted).

We find that the BIA did not abuse its discretion in concluding that Lin failed to establish changed country conditions in China because she failed to demonstrate the authenticity of her documentary evidence. Although Lin was not limited to the document authentication procedure provided in 8 C.F.R. § 1287.6, she was "obligat[ed] to lay a foundation from which a factfinder can conclude the evidence is what it purports to be and that it is trustworthy." *Zhu*, 744 F.3d at 273. We have "emphasize[d] that the burden to make this showing of authenticity . . . rests with the proponent of the document." *Id.* at 274. Importantly, "[t]he BIA is not required to conduct an independent examination of a document where the proponent has provided no basis from which it could find the document is authentic . . . . [I]f a proponent fails to make such a showing, then it is within the BIA's discretion to decline to rely on such evidence." *Id.*

We have recently discussed the requirements for authenticating documents submitted in connection with a motion to reopen removal proceedings. *See Zhu*, 744 F.3d at 272–77. In

*Zhu*, this Court vacated an order of the BIA denying a motion to reopen, which was based in part on the BIA's contention that the petitioner failed to authenticate her foreign documents. Although Zhu had not authenticated her documents under § 1287.6, this was no fault of her own. Indeed, her counsel had sent each document to the Consulate General of the United States in China and to the Fujian Provincial Foreign Affairs Office, asking both entities for assistance in authenticating the documents. *Id.* at 273. Further, Zhu had attempted to authenticate her documents in other ways, such as by relying on self-authenticating procedures in the Federal Rules of Evidence, by noting the consistencies between her unauthenticated documents and official U.S. publications, and by retaining a forensic expert to offer an opinion on the documents' authenticity. In remanding for further consideration, we noted that, in rejecting the documents for lack of authentication, the BIA did "not address whether other efforts were made to authenticate the documents and, if so, why they failed." *Id.*

Unlike the petitioner in *Zhu*, there is no evidence before us suggesting that Lin made any effort to authenticate her documents—either pursuant to the procedures outlined in 8 C.F.R. § 1287.6, or in any other manner. As noted above, "the burden to make this showing of authenticity . . . rests with the proponent of the document." *Zhu*, 744 F.3d at 274. Because Lin has not satisfied her burden of showing that her foreign documents were authentic, we conclude that the BIA did not abuse its discretion by declining to give any weight to the evidence.

We also see no error in the BIA's treatment of the 2009 and 2010 State Department Reports. Lin has not explained how these reports establish a material change in country conditions since the time of her initial hearing before the IJ in 2001. Further, the reports explain that enforcement of China's family planning policy varies at the local level, and Lin has failed to explain how the reports offer sufficient evidence to suggest that she will be subject to sterilization if returned to her specific locality in China. The BIA's order indicates that the Board meaningfully considered the evidence and it offers a valid explanation for why the evidence was rejected. *See Zhu*, 744 F.3d at 272 ("[T]he BIA must provide an indication that it considered such evidence, and if the evidence is rejected, an explanation as to why it was rejected."). Accordingly, we find no error in the BIA's treatment of the evidence or its ultimate determination that Lin failed to establish changed country conditions in China creating an exception to the time limitations for filing a motion to reopen.

For the foregoing reasons, we will deny the petition for review.